UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVUS OPTIMUM LABS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GINA TAMAYO, et al.,<br><br>    Defendants. | Case No. 13-cv-01119-JST<br><br>**ORDER DENYING EX PARTE APPLICATION FOR WRIT OF ATTACHMENT**<br><br>Dkt. No. 8 |

Plaintiffs Novus Optimum Labs and Meliza Reyes have applied *ex parte* for a right to attach order and writ of attachment on March 15, 2013. After considering the application, memorandum, documentary evidence, and declarations in support of the application, the Court finds that Plaintiffs have not met their burden of showing that *ex parte* relief without notice to Defendants is appropriate and will deny the application.

**I. FACTS**

Plaintiff Meliza Reyes, 67, and her wholly owned corporation Novus Optimum Labs filed this action on March 12, 2013, alleging that one of Reyes' employees, Defendant Gina Tamayo, absconded with $160,000 in cash and almost $100,000 in Reyes' personal property after Reyes entrusted her with the keys to the corporate facility on Pier 26 in San Francisco. Reyes claims Tamayo and her husband Edgardo manipulated her into firing her relatives, situated themselves as trusted friends and confidants, cased the corporate facility for valuables, tried to poison her food, and ultimately disappeared with money and property along with the formulas for Novus Optimum Labs' herbal supplements. Reyes claims the Tamayos used the formulas or stolen inventory in order to set up a copycat website and business selling the same products under the registered business name "Novus Opti-Lab," based in South San Francisco. Some of Reyes' allegedly stolen

1  possessions include a Rodin sculpture, which she claims was appraised in 1995 by Sotheby's at a
2  value of $25,000, a laptop computer, jewelry, autographed memorabilia, a Fabergé egg, and an
3  external hard drive.  Reyes claims her customers paid the Tamayos, through the copycat "Novus
4  Opti-Lab" business, $14,683.30 in proceeds for products taken from her inventory.  In total, Reyes
5  claims the Tamayos stole $258,900 and misappropriated the $14,683.40, for a total of
6  $273,583.40, which sum she seeks via *ex parte* prejudgment seizure.
7      Reyes brings claims under the Lanham Act and for copyright infringement arising out of
8  the copycat business, as well as several state and common law claims arising out of the theft and
9  embezzlement, including conversion, theft by larceny, fraud, negligent misrepresentation, and
10 breach of implied contract.  In addition, Reyes sues under California's Financial Abuse of Elders
11 law, Cal. Welf. & Inst. Code § 15610.30.
12     In support of her application, Plaintiff Reyes verified her Complaint and provided: a sworn
13 declaration repeating the factual allegations in the Complaint; the declarations of two men who
14 had access to the facility and who swear they did not steal the property; an accounting of the funds
15 misappropriated by the "Novus Opti-Lab" business; copies of the invoices pertaining to the
16 customers who paid the Tamayos for Reyes' inventory; copies of one customer's credit card
17 statements showing payments to "NOVUS OPTI-LAB SOUTH SAN FRA CA" as well as to
18 "NOVUS OPTIMUM INC SAN FRANCISCO;" and printouts of Reyes' website and the "Novus
19 Opti-Lab" website, which are very similar in appearance.

20 **II.  LEGAL STANDARDS**

21     Plaintiffs request a writ of attachment as authorized by the California Civil Code, pursuant
22 to Federal Rule of Civil Procedure 64, which authorizes district courts to employ state law
23 remedies for attachment.
24     Attachment "is a remedy by which a plaintiff with a contractual claim to money (not a
25 claim to a specific item of property) may have various items of a defendant's property seized
26 before judgment and held by a levying officer for execution after judgment."  *Waffer Int'l Corp. v.*
27 *Khorsandi*, 69 Cal. App. 4th 1261, 1271 (Cal. 1999) (emphasis omitted).  Attachment is therefore
28 nothing more than "a provisional remedy to aid in the collection of a money demand."  *Kemp*

1   *Bros. Constr. Inc. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476 (Cal. 2007).  It is a "harsh

2   remedy," requests for which will be "strictly construed." *Blastrac, N.A. v. Concrete Solutions &*

3   *Supply*, 678 F. Supp. 2d 1001, 1004–05 (C.D. Cal. 2010).

4       Before a a writ of attachment may issue, plaintiff must demonstrate the following:

5   (1)    The claim upon which the attachment is based is one upon which an attachment
6       may be issued;

7   (2)    The plaintiff has established the probable validity of the claim upon which the
8       attachment is based;

9   (3)    The attachment is not sought for a purpose other than the recovery on the
10      claim upon which the attachment is based; and

11  (4)    The amount to be secured by the attachment is greater than zero.

12  Cal. Code Civ. Proc. § 484.090(a).  The probable validity requirement is satisfied "where it is

13  more likely than not that the plaintiff will obtain a judgment against the defendant on that claim."

14  Cal. Code Civ. Proc. § 481.190.

15      In addition, because they are seeking *ex parte* relief, Plaintiffs must also show that "[u]nder

16  the circumstances of the case, it may be inferred that there is a danger that the property sought to

17  be attached would be concealed, substantially impaired in value, or otherwise made unavailable to

18  levy if issuance of the order were delayed until the matter could be heard on notice."  Cal. Civ.

19  Proc. Code § 485.010.  *See Connecticut v. Doehr*, 501 U.S. 1, 16 (1991) (holding prejudgment

20  seizure without notice permissible only upon showing of exigent circumstances).

21  **III.   ANALYSIS**

22      The court finds that Plaintiffs have not met their burden of demonstrating "great and

23  irreparable injury."  Plaintiffs rest their application almost entirely on their allegations regarding

24  Defendants' alleged fraud, and provide virtually no evidence that Defendants are likely to hide or

25  dissipate assets if given notice of this application.

26      "The fact that Defendants may have been engaged in some sort of fraud does not

27  automatically justify the issuance of an asset freeze." *Vaccaro v. Sparks*, No. 11-00164, 2011 WL

28  772394, at *2 (C.D. Cal. Feb. 1, 2011).  In *Vaccaro*, the plaintiffs sought a temporary restraining

order freezing the defendant's assets. As Plaintiffs do here, the *Vaccaro* plaintiffs "conclusorily argue[d]" that the fraud allegations implied the defendant would flee the jurisdiction or hide his assets. The court concluded:

> Plaintiffs allegations of injury are financial in nature and, therefore, compensable. In addition, although Plaintiffs speculate that a given defendant's willingness to commit a fraud evinces the same defendant's willingness to wrongfully dissipate assets or to flee the Court's jurisidiction, "[s]peculative injury does not constitute irreparable injury." The only support that Plaintiffs offer for the specific claim that Defendants are likely to dissipate assets or flee the Court's jurisdiction is the conjectural assertion that "Sparks will go to any length to achieve his goal [of defrauding Plaintiffs]." Pl.'s Mem. at 20. Plaintiffs have failed to meet their burden of showing that they are entitled to the "drastic remedy" of emergency injunctive relief.

*Id.* (*quoting Goldie's Bookstore, Inc. v. Super. Court of Cal.*, 739 F.2d 466, 472 (9th Cir.1984)).

Similarly, in *Blackmon v. Tobias*, No. 11-2853, 2011 WL 2445963, at *4 (N.D. Cal. June 16, 2011), the court denied an *ex parte* application for writ of attachment because the plaintiff "merely offer[ed] his opinion that Defendants will 'hide or dissipate' their assets based on their 'numerous and repeated false statements,' and prior remarks regarding hiding assets from the Swiss court and to avoid the payment of taxes." In fact, in that case, the defendant told the plaintiff that if he pursued legal action against her, "'she would escape, just disappear or commit suicide.'" *Id.*

In *Blackmon*, just as in *Vaccaro*, plaintiffs presented no specific evidence that the defendant was likely to hide or dissipate assets if given notice that the plaintiffs were seeking a writ of attachment. Citing *Vaccaro*, the *Blackmon* court reiterated that "prior fraudulent conduct is insufficient to justify dispensing with notice." *Id. See also Osborno v. Fong*, No. 11–0302, 2011 WL 250364, at*2 (N.D. Cal., Jan. 26, 2011) (denying temporary restraining order based on "Plaintiff's conclusory and unsupported allegation that notice of the instant TRO application will result in the further dissipation of trust assets").

Reyes' application in this action suffers from the same defects present in *Blackmon* and *Vaccaro*. Reyes argues that "Defendants' conduct of stealing Plaintiffs' money and personal belongings . . . make[s] it quite clear their intent was to conceal their conduct. There should be no

4

doubt they will continue to do so if they become aware of Plaintiffs' request for an attachment. If given regular notice, Defendants will conceal their bank account funds and move money and other assets on the premises in order to avoid an attachment." Dkt. No. 8-1, at 12. These allegations are inadequate.

Because the Court concludes that Reyes has not met the requirements for *ex parte* relief, the Court will defer discussing the substantive merits of the application until such time as Reyes brings the matter before the court after notice.

Reyes' application for a writ of attachment and request for a temporary restraining order are both denied. Plaintiffs shall serve this Order on all parties and file a proof of service forthwith.

**IT IS SO ORDERED**.

Dated: April 3, 2013

_____
JON S. TIGAR
United States District Judge